**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| ITEQ Corporation, | ) | No. 09-CV-1318-PHX-PGR |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| Isola USA Corporation, | ) | |
| Defendant. | ) | |

Currently before the Court is Defendant Isola USA's ("Isola") Motion to Enforce Alternative Dispute Resolution Procedures Pursuant to the Parties' Settlement Agreement and to Stay Proceedings. (Doc. 9.) Defendant Isola is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Chandler, Arizona. Plaintiff ITEQ Corporation ("ITEQ") is a corporation organized and existing under the laws of the Republic of China. The matter currently before the Court involves the interpretation of a specific paragraph ("Paragraph 5") of the Settlement Agreement entered into by the two parties. Isola contends that Paragraph 5 is a binding Alternative Dispute Resolution ("ADR") clause, ITEQ disagrees. The matter is fully briefed.

I. Background

The claims asserted in ITEQ's Complaint are brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and arise under the patent laws of the United

States, 35 U.S.C. §§ 100, et.[1]

Isola manufactures and sells wiring boards. More specifically, Isola designs, manufactures, and sells high performance laminates and copper-clad "prepreg" laminates for use in the manufacturing of multilayer printed circuit boards. Isola manufactures a variety of high performance laminates tailored for specific printed circuit board applications, including lead-free applications. ITEQ is a Taiwan-based rival laminate developer and manufacturer.

Isola owns U.S. Patent Number 6,509,414 (the "'414 Patent") entitled "Epoxy Resin, Styrene-Maleic Anhydride Copolymer and Co-Crosslinking Agent." It also owns a counterpart patent in Taiwan, R.O.C. Invention Patent No. 142122 (the "'122 Patent") (the U.S. and Taiwan patents are collectively referred to herein as the "Patents at Issue").

In 2008, Isola filed an action in the International Trade Commission ("ITC") seeking to restrict ITEQ from importing into the U.S. its IT200DK laminate, which Isola believed infringed on the Patents at Issue. Contemporaneously, Isola applied to the Intellectual Property Court in Taiwan for a preliminary injunction order barring ITEQ from selling and distributing IT200DK.

In an effort to amicably resolve the patent dispute before the ITC and the Intellectual Property Court in Taiwan, on November 19, 2008, Isola and ITEQ reached an agreement to settle their disputes concerning the alleged infringement outside of court thereby ending the Taiwan litigation and the ITC investigation. The terms of said agreement were memorialized

---

[1] ITEQ's underlying infringement contention is that because Claim 1 of the '414 patent claims a resin composition that is free from an "allyl network forming compound" and that the terms "prepregs," "laminates," and/or "printed wiring board" are not found in any claims of the '414 patent, a resin composition that *contains* an "allyl network forming compound" would not and cannot infringe the '414 patent. ITEQ makes a similar argument for the '122 patent. ITEQ has two products at issue in the pending matter, 200DK-1 and 200DK-2, both of which use a resin composition as an impregnant and both of which ITEQ contends contain allyl network forming compounds.

in the Settlement Agreement (the "Agreement"), the interpretation of which has now become the crux of the matter currently before this Court.

In early 2009, shortly after entering into the Agreement, ITEQ informed Isola that it had reformulated IT200DK-1 and IT200DK-2 and that it sought to import into the United States the two newly designed products, referred to as 200DK-1 and 200DK-2. ITEQ informed Isola's Taiwan counsel, Mr. T. C. Chiang, that it wished to send to Isola for verification of non-infringement the resin compositions that were used to impregnate the prepregs for use in making the PWBs. During the course of communication, the parties came to an impasse regarding the verification process. Consequently, ITEQ filed the case *sub judice* and thereafter Isola filed the pending motion.

The Court will not recount the entire content of the string of communication between the parties, as it is not necessary to resolve the pending matter. Nor will the Court examine, at this time, the reasonableness of time and efficiency that went into the previously attempted verification process. The Court will solely address the issue currently before it, whether Paragraph 5 of the Agreement is a binding ADR clause. Paragraph 5 states:

> ITEQ **may** provide its existing and/or new products and/or other related documents (e.g., patent infringement assessment report, test report or expert opinion) to ISOLA so that it can verify whether the products infringe any of the Patents at Issue. ISOLA shall conduct the verification and provide its comments in writing to ITEQ at ISOLA's expense within a reasonable period not exceeding two months. **If ITEQ provides** its trade secrets to ISOLA for the above verification, ISOLA shall sign a nondisclosure agreement to protect the trade secrets and promise not to use the trade secrets for a purpose other than verification. If ITEQ cannot agree to ISOLA's comments and no consensus can be reached after discussion, the Parties **should** jointly engage a third party which is agreed by the Parties to conduct an independent verification. The Parties shall respect and be subject to the conclusion of the verification of the third party. The cost of the third party's verification shall be shared by the Parties equally.

II.  Analysis

Isola contends that Paragraph 5 is a binding ADR clause which this Court should enforce and compel ITEQ to participate in third party arbitration or mediation with Isola to resolve their patent infringement issues. Isola alleges that pursuant to Paragraph 5, the

parties have expressed a "clear intent" to resolve any disputes concerning whether ITEQ's products infringe on the Patents at Issue outside the courtroom, first between themselves and then, if need be, by retention of a third party to conduct an independent testing and verification. To a certain degree, ITEQ both agrees and disagrees with Isola's interpretation of Paragraph 5.[2] ITEQ agrees that the parties intended to retain a third party to verify noninfringement and conduct independent testing. However, where the parties diverge is that ITEQ contends that it was the parties' intent to retain a third party *laboratory* to verify infringement and conduct the testing, *not* to participate in arbitration or mediation.

The Court has considered the Agreement and the record in its entirety and it does not find that Paragraph 5 is a binding ADR clause.[3] Paragraph 5 wholly lacks any semblance of a binding ADR clause. There is no compulsory language binding the parties to ADR, no mention of mediation, arbitration, or alternative dispute resolution of any kind. Notably, there do exist significant differences between mediation and arbitration, none of which have been addressed by Isola in the instant motion or articulated in Paragraph 5. The Agreement is a legal contract and the Court cannot read into a contract a term that does not exist. Goodman v. Newman Inv. Co., 421 P.2d 318, (1966)(It is not within the power of the court to "revise, modify, alter, extend, or remake" a contract to include terms not agreed upon by the parties.) In the Agreement, the parties agreed to retain a third party to conduct independent verification and testing. According to the evidence submitted by *both* parties, the third party is a laboratory. See infra. The specific details as to which third party will be

---

[2] To the extent that ITEQ raises the issue of claim construction and determination in its responsive brief, the Court will address that issue in a separate order addressing ITEQ's Motion for Leave to File a Motion for Claim Determination, as it is not necessary to address the issue in order to resolve the pending ADR matter.

[3] ITEQ's argument that Paragraph 13 resembles more of an ADR clause than Paragraph 5 has no merit. Paragraph 13 is a forum selection clause which sets forth the specific forums agreed upon by the parties in the event that litigation were to commence regarding the Agreement. It too is not an ADR clause.

1 used, however, is not set forth in the Agreement. The Court finds that the parties have agreed to resolve their disputes outside of court, either between themselves or by retaining a third party laboratory, and that Paragraph 5 is *not* a binding ADR clause.

Furthermore, as noted by ITEQ in its Surreply, in the event that the parties failed to have a meeting of the minds during the formation of the Agreement, Paragraph 5 would be rendered void. Hill-Shafer Partnership v. Chilson Family Trust, 165 Ariz. 469, 473 (Ariz. 1990); see also Gifford v. Makaus, 112 Ariz. 232, 236 (1975); Heywood v. Ziol, 91 Ariz. 309, 314 (1962). Isola states in its Reply brief that the term "third party" as used in Paragraph 5 was intended by both parties to mean "third party arbitrator." However, ITEQ has made it abundantly clear that it interprets "third party" to mean "an independent laboratory." Having reviewed the evidence, the Court finds that Isola's *original* interpretation was in fact parallel to that of ITEQ's current and initial interpretation of "third party." See Mr. T. C. Chiang's May 11, 2009 email to Fei-Fei Chao, stating that "(3) If ITEQ wants to accelerate the verification process, ITEQ may consider proposing several candidates for the third-party laboratory to conduct the independent verification *in accordance with the terms of the Settlement Agreement*."[4] (Emphasis added). Thus, the Court finds that there was in fact a meeting of the minds at the time the contract was formed with regard to the meaning of "third party." Therefore, Paragraph 5 is not void, it is simply not a binding ADR clause.

Accordingly,

/ / /

/ / /

/ / /

/ / /

---

[4] Notably, Mr. T.C. Chiang, Isola's Taiwan counsel, drafted the Settlement Agreement. It is a fundamental principle of law that a contract will be construed most strongly against the drafter. Hamberlin v. Townsend, 261 P.2d 1003, 1006 (1953).

- 5 -

IT IS HEREBY ORDERED DENYING Defendant Isola's Motion to Enforce Alternative Dispute Resolution Procedures Pursuant to the Parties' Settlement Agreement and to Stay Proceedings. (Doc. 9.)

DATED this 19th day of October, 2009.

Paul G. Rosenblatt
United States District Judge